UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
JOHN H. PATTERSON,

                                Plaintiff,

   -against-

SAPPHIRE RESORTS and STARPOINT RESORT
GROUP, INC.,

                                Defendants.
-----------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
23-CV-2916 (NJC)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court, on referral from the Honorable Nusrat J. Choudhury for Report and Recommendation, is Defendants Sapphire Resorts' ("Sapphire") and Starpoint Resort Group, Inc.'s ("Starpoint," collectively "Defendants") motion to dismiss Plaintiff John H. Patterson's ("Plaintiff" or "Patterson") Amended Complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), 12(b)(2), 12(b)(6), and 12(h)(3). *See* Docket Entry ("DE") [31]. In this action, Patterson alleges claims for fraudulent inducement and breach of the implied covenant of good faith and fair dealing related to a real estate transaction. *See* DE [1], [27]. On July 8, 2024, Defendants filed the instant motion to dismiss, which Plaintiff opposes. *See* DE [31], [33], [35]. On August 23, 2024, Judge Choudhury referred Defendants' motion to this Court for a Report and Recommendation as to whether it should be granted. For the reasons set forth herein, the Court respectfully recommends that Defendants' motion to dismiss be granted.

1

I. BACKGROUND

A. Facts

The following facts are taken from the Amended Complaint ("Am. Compl."), DE [27], and are accepted as true for purposes of the instant motion. Plaintiff is a resident of Suffolk County, New York. Am. Compl. ¶ 1. Starpoint is a Nevada corporation, with a principal place of business in Las Vegas, Nevada. *Id.* at ¶ 2. Starpoint operates under the tradename Sapphire Resorts. *Id.*

In or around 2017, Patterson owned a timeshare property in Pennsylvania (the "Original Property"). *Id.* at ¶ 6. At some time in 2017, Starpoint contacted Plaintiff seeking to purchase the Original Property and sell him a new timeshare under the Sapphire Resorts name (the "Sapphire Property"). *Id.* at ¶ 7. Patterson alleges that, pursuant to the proposed transaction, his "Original Timeshare would be converted to a Sapphire timeshare in Las Vegas, with the ability to exchange those rights for vacation visits to other vacation properties around the country." *Id.* at ¶ 9.

Plaintiff states that Starpoint represented that "the investment was part of an arrangement" with the Department of Veterans Affairs (the "VA"), *id.* at ¶ 8, but does not elaborate further about this "arrangement." Nevertheless, Patterson attended a sales meeting in Las Vegas at which he "repeatedly demanded assurances that the Sapphire program was sanctioned by the VA." *Id.* at ¶¶ 9-10. In response, Defendants consistently assured him "that he had been contacted precisely because they knew [he] was a veteran and that the VA had sanctioned the program." *Id.*

2

At the sales meeting, Starpoint presented Patterson with a contract containing language that "plaintiff understood addressed in some way the relationship between the Sapphire program and government entities and agencies." *Id.* at ¶ 11. Although not alleged in the Amended Complaint, the Purchase Agreement and Escrow Instructions and Security Agreement (the "Purchase Agreement") related to this transaction reflects that the amount Plaintiff will have paid, including financing costs, after all payments have been made, is $10,977.93. *See* Certification of Counsel David William Tyler in Support of Defendants' Motion to Dismiss the Amended Complaint, DE [31-2], Ex. M at 2.[1]

The Purchase Agreement contains an arbitration clause (the "Arbitration Clause") that provides, "Any dispute, claim, suit, demand or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, ***shall be determined exclusively and finally by arbitration***." Purchase Agreement § 15(a) (emphasis added). The Purchase Agreement also contains a forum selection clause (the "Forum Selection Clause") that provides, "The parties unequivocally agree that all Disputes (defined above) between the parties shall be brought exclusively within Clark County, State of Nevada." *Id.* at § 16.6.

---

[1] In deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court may consider materials outside the pleadings, including attorney affidavits. *See Basile v. Levittown United Teachers*, 17 F. Supp. 3d 195, 204 (E.D.N.Y. 2014) ("In reviewing a motion to dismiss under Rule 12(b)(1), the Court . . . may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue.") (quoting *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000)).

3

Almost immediately after entering into the Purchase Agreement with Starpoint, which Patterson executed on October 1, 2019, Plaintiff "contacted Starpoint with concerns about the transaction but no one at Starpoint acknowledged or responded to his communications." Am. Compl. ¶ 12. Plaintiff, however, does not allege the specific nature of his "concerns." Patterson continued to attempt to communicate with Starpoint, and ultimately "flew to Las Vegas at his own expense to visit the Starpoint offices." *Id.* at ¶ 13. Plaintiff alleges that Starpoint staff nevertheless "refused to communicate with [him]." *Id.* at ¶¶ 14-15. Patterson does not allege how, if at all, Defendants failed to perform with respect to the Purchase Agreement.

B.  **Procedural History**

On April 19, 2023, Plaintiff commenced this action *pro se*, alleging that Defendants "misrepresented themselve[s] as being authorized by the Veterans Administration." DE [1]. He sought to recover "[a]ll monies returned in the amount of [$]80,000," as well as $1,000,000 "for suffering, hardship, pain, fraud, deceit, and for the misrepresentation of a U.S. government agency." *Id.* On July 10, 2023, Defendants filed a letter informing the Court that they intended to move to dismiss Patterson's claims for lack of jurisdiction. *See* DE [10]. In response, on November 28, 2023, the District Judge issued an Order to Show Cause, directing Plaintiff to:

> (1) provide the place of incorporation and principal place of business of Defendant Starpoint Resorts (or "Starpoint Resort Groups, Inc."); (2) provide any facts to show "to a reasonable probability" that the amount in controversy is at least $75,000, which is required for this Court to exercise jurisdiction over this case under 28 U.S.C. § 1332(a); and (3) to show good cause why the Plaintiff has not served Starpoint Resorts.

4

DE [15].

On December 27, 2023, Patterson filed a letter asserting, without substantiation, that "the amount in controversy exceeds $75,000," that he is a resident of New York, and "Defendants are Residents of a [*sic*] State of Nevada." DE [16]. On February 28, 2024, Defendants filed a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim, and improper venue based on the Arbitration Clause and Forum Selection Clause. DE [21]. Thereafter, Patterson retained counsel and, on April 29, 2024, filed an Amended Complaint, which is the operative pleading in this action. *See* DE [23], [27]. In his Amended Complaint, Plaintiff asserts causes of action against both Defendants for fraudulent inducement and breach of the implied covenant of good faith and fair dealing. *See* Am. Compl. ¶¶ 16-26.

On July 8, 2024, Defendants filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6), and 12(h)(3). DE [31]. Defendants argue that the Amended Complaint should be dismissed because: (1) the Court lacks subject matter jurisdiction as the amount in controversy does not exceed $75,000 and there is no federal question presented; (2) the Court lacks personal jurisdiction over Defendants; (3) Plaintiff fails to state a claim for fraudulent inducement or breach of the implied covenant of good faith and fair dealing; and (4) his claims are subject to the Purchase Agreement's Arbitration Clause and Forum Selection Clause, and are brought in an improper venue. *Id.* On August 23, 2024, Judge Choudhury referred Defendants' motion to this Court for a Report and Recommendation as to whether it should be granted.

5

For the reasons set forth herein, the Court respectfully recommends that Plaintiff's Amended Complaint be dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, and for improper venue based on the Arbitration Clause and Forum Selection Clause. In light of this, the Court does not address Defendants' motion insofar as they seek dismissal for failure to state a claim.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Subject matter jurisdiction is a prerequisite to a claim proceeding in federal court. *See Emiabata v. Farmers Ins. Corp.*, 848 F. App'x 27, 29 ("It is axiomatic that federal courts must 'verify the existence of subject-matter jurisdiction before proceeding to the merits.'") (quoting *Singh v. U.S. Citizenship & Immigration Servs.*, 878 F.3d 441, 445 (2d Cir. 2017)). Plaintiff seeks to invoke both diversity of citizenship and federal question jurisdiction. Am. Compl. ¶¶ 3-5. Neither applies.

#### 1. Plaintiff Fails to Establish Diversity Jurisdiction

Diversity jurisdiction exists where there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of costs and interest. 28 U.S.C. § 1332(a); *see Ulmer v. StreetTeam Software, LLC*, No. 22-CV-5662(DLI)(CLP), 2023 WL 2306020, at *2 (E.D.N.Y. Feb. 28, 2023) (discussing diversity jurisdiction standard and dismissing claims for failure to satisfy the amount-in-controversy requirement). Defendants do not dispute that complete diversity of citizenship exists, and instead argue that Plaintiff fails to plausibly allege that the amount in controversy exceeds $75,000. *See* Memorandum

6

of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Defs.' Mem."), DE [31-1] at 10-14.  The Court agrees.

The plaintiff bears "the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (internal citation omitted); *see Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) ("The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists.") (internal quotation omitted).  The Court "need not presume that [a] general allegation that the amount in controversy exceeds the jurisdictional minimum constitutes a good faith representation of the actual amount in controversy." *Wood v. Maguire Auto., LLC*, No. 09-CV-640(GTS/GHL), 2011 WL 4478485, at *2 (N.D.N.Y. Sept. 26, 2011), *aff'd*, 508 F. App'x 65, 65-66 (2d. Cir. 2013).

Here, Plaintiff fails to allege facts sufficient to plausibly establish that the amount in controversy exceeds $75,000.  According to Patterson, "the total of his damages exceeds the jurisdictional threshold of $75,000 based on his transaction costs, pre-litigation travel and negotiation expenses et cet [*sic*]." Am. Compl. ¶ 4.  He further alleges that his damages include "the costs of his transaction regarding the Original Timeshare, the costs of his transaction purchasing the Sapphire Resorts timeshare, [and] all of his expenses in attempting to communicating [*sic*] with Starpoint." *Id.* at ¶¶ 23, 26.  Nevertheless, the Purchase Agreement itself definitively establishes that the sales price of the Sapphire Property, including financing and transaction costs, was $10,977.93, which falls well short of the $75,000 threshold.  *See*

7

Purchase Agreement § 5. Plaintiff does not plausibly allege that any of the additional categories of damages he identifies are recoverable or would remedy this shortfall, and general allegations that the amount-in-controversy requirement has been satisfied are insufficient to invoke federal jurisdiction. *See Wood*, 2011 WL 4478485, at *2; *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 85-86 (2d Cir. 2012) (affirming dismissal for lack of subject matter jurisdiction where the plaintiff only "alleged generally that th[e] . . . amount in controversy exceed[ed] $75,000").

In an effort to bolster the amount in controversy, Plaintiff also alleges that his damages include costs related to the Original Property and travel expenses he incurred related to the Sapphire Property. Am. Compl. ¶¶ 4, 23, 26; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), DE [33], at 1-2. Neither of these plausibly brings the amount in controversy over $75,000. With respect to costs related to the Original Property, Plaintiff does not identify any specific costs, and, in any event, he already owned the Original Property when Defendants allegedly contacted him such that any costs related to that property are irrelevant to his present claims for fraudulent inducement and breach of the implied covenant of good faith and fair dealing. Am. Compl. ¶¶ 6-7. Insofar as Patterson argues in opposition that "defendants converted [his] existing Pennsylvania timeshare for the Las Vegas timeshare, greatly expanding the scope of damages," *see* Pl.'s Opp'n at 1, he does not assert a claim for conversion, and the only two causes of action are entirely unrelated to the Original Property. Am. Compl. ¶¶

8

16-26. Therefore, any costs related to the Original Property are irrelevant to evaluating the amount in controversy.

With respect to any alleged travel expenses related to the Sapphire Property, Plaintiff offers no support that this is an amount that would be properly considered for his claims. Patterson does not allege the amount he spent, and he offers no plausible allegation that any such expenses would be approximately $65,000, the remainder of the amount necessary to meet the threshold. Accordingly, even if his travel expenses were properly considered, it is not reasonably probable that they would satisfy the amount-in-controversy requirement. *Mittal v. Absar*, 416 F. Supp. 3d 149, 151 (E.D.N.Y. 2017) (holding that the amount-in-controversy requirement was not met based on minimal unspecified incidental damages).[2]

Finally, Plaintiff argues that his allegations support "a plausible recovery for punitive damage[s] for trading on the false relationship to the VA." Pl.'s Opp'n at 2. Plaintiff's Amended Complaint does not seek punitive damages, and his allegations do not support an inference that punitive damages are appropriate. Therefore, the Court recommends that punitive damages not be considered in the amount-in-controversy analysis. *See Nwanza v. Time, Inc.*, 125 F. App'x 346, 349 (2d Cir. 2005) (declining to consider claim for punitive damages and observing that punitive damages are subject to heightened scrutiny when relied upon to satisfy the amount-

---

[2] Insofar as Plaintiff argues that the amount in controversy includes "costs incurred having to engage alternative sites to vacation because of defendants' complete failure to perform," *see* Pl.'s Opp'n at 1, his argument is meritless. Patterson does not allege that the Purchase Agreement provides for the recovery of any such amounts, nor does he offer any legal support for the notion that the cost of arranging for alternative vacation accommodations is compensable or appropriately considered in an amount-in-controversy analysis.

9

in-controversy requirement); *Mariano v. 61-63 Bond St. F&B*, No. 22-CV-7189(DLI)(RML), 2023 WL 2329854, at *5 (E.D.N.Y. Mar. 2, 2023) ("The Court declines to consider Plaintiff's requests for punitive damages, declaratory relief, and attorney's fees in assessing the amount in controversy because the Complaint is devoid of any allegations that explain, justify, or attempt to value any of these other forms of relief sought."); *Trisvan v. Burger King Corp.*, No. 19-CV-6396(MKB), 2020 WL 13851936, at *3 n.4 (E.D.N.Y. Mar. 2, 2020) (declining to consider a speculative claim for punitive damages for purposes of the amount in controversy); *Watty v. Cuomo*, No. 12-CV-2260(SJF)(WDW), 2013 WL 4495184, at *2 (E.D.N.Y. Aug. 14, 2013) ("Plaintiff's demand for punitive and other additional damages, unsupported by the law or the allegations in the amended complaint, is not sufficient to satisfy the amount-in-controversy requirement."); *Carling v. Peters*, No. 10 Civ. 4573(PAE)(HBP), 2013 WL 865842, at *6-7 (S.D.N.Y. Mar. 8, 2013) (declining to consider punitive damages for purposes of an amount-in-controversy analysis in a fraud and breach of contract claim where the alleged conduct did not affect the public at large).

Based upon the foregoing, Plaintiff's allegations fall short of the $75,000 amount-in-controversy threshold. Therefore, he has failed to plausibly allege the existence of diversity jurisdiction. 28 U.S.C. § 1332(a).

    2. <u>Plaintiff Fails to Establish Federal Question Jurisdiction</u>

Plaintiff also invokes federal question jurisdiction. Am. Compl. ¶¶ 3, 5; Pl.'s Opp'n at 2-3. Federal question jurisdiction exists where "the complaint (1) asserts a

federal cause of action, or (2) presents state claims that 'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *County of Nassau v. New York*, 724 F. Supp. 2d 295, 301 (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005)). "[F]ederal jurisdiction does not exist simply because a state law claim may implicate a federal issue." *Id.* at 302. Instead, "[f]ederal question jurisdiction arises only where the complaint 'raises issues of federal law.'" *Mazaya Trading Co. v. Li & Fung Ltd.*, 833 F. App'x 841, 843 (2d Cir. 2020) (quoting *NASDAQ OMX Group, Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1018 (2d Cir. 2014)).

Plaintiff asserts state law claims for fraudulent inducement and breach of the implied covenant of good faith and fair dealing. Am. Compl. ¶¶ 16-26. Neither claim arises under or raises issues of federal law, and they are therefore insufficient to establish federal question jurisdiction. *See, e.g.*, *Barton v. Northeast Transp., Inc.*, No. 21-CV-326(KMK), 2022 WL 203593, at *5 (S.D.N.Y. Jan. 24, 2022) (observing that a claim for breach of the implied covenant of good faith and fair dealing is a "claim sounding in state common law" and does not establish federal question jurisdiction) (quoting *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 Civ. 5263(AKH), 2017 WL 3600425, at *1 (S.D.N.Y. Aug. 18, 2017)); *Mallgren v. John Doe Corp.*, No. 13-CV-1265(MKB), 2013 WL 1873319, at *3 (E.D.N.Y. May 2, 2013) (observing that a claim for fraudulent inducement "do[es] not invoke any federal question").

11

Relying on 38 C.F.R. § 3.901, Plaintiff alleges that federal question jurisdiction exists "based on Starpoint falsely 'trading' on a fraudulently asserted relationship with the United States Veterans' Administration." Am. Compl. ¶ 5; Pl.'s Opp'n at 2-3. Section 3.901, however, addresses fraudulent activity "concerning any ***claim for benefits*** under any of the laws administered by the Department of Veterans Affairs." 38 C.F.R. § 3.901 (emphasis added). While Patterson may believe that an endorsement by the VA is somehow ***beneficial*** to Defendants, it is by no means a "claim for benefits" as contemplated by 38 C.F.R. § 3.901, and that provision is irrelevant to Plaintiff's allegations. To that end, courts have observed that Section 3.901 pertains to the VA's ability to recoup benefits procured by fraud and does not create a private cause of action on behalf of an individual recipient of benefits. *See, e.g.*, *Joannou v. Watkins*, No. 20-CV-213-TES, 2020 WL 5079162, at *3 (M.D. Ga. Aug. 27, 2020) ("38 C.F.R. § 3.901 does not provide a private cause of action and is the U.S. Department of Veteran Affairs regulation that defines fraud and explains how committing fraud impacts a VA benefits."). Accordingly, Plaintiff also fails to allege the existence of federal question jurisdiction, and the Court respectfully recommends that the Amended Complaint be dismissed for lack of subject matter jurisdiction.

3.   Plaintiff Does Not Allege Personal Jurisdiction

Defendants also move to dismiss the Amended Complaint on the grounds that the Court lacks personal jurisdiction over them. *See* Defs.' Mem. at 16. In evaluating a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), "a district court must 'determine whether there is jurisdiction over the

12

defendant under the relevant forum state's laws' by applying its long-arm statute." *Simonson v. Olejniczak*, No. 22-1219, 2023 WL 2941521, at *1 (2d Cir. Apr. 14, 2023) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).

Relevant here, New York courts may exercise personal jurisdiction over a non-domiciliary defendant where the defendant:[3]

> commits a tortious act without the state causing injury to person or property within the state . . . if he:
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. 302(a)(3).

Thus, "in order to establish jurisdiction under § 302(a)(3)(i) or (ii), a plaintiff must first show that: (1) the defendant committed a tortious act outside New York; (2) the claim arose from that tortious act; and (3) the act caused injury to a person or property within New York." *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 337 (E.D.N.Y. 2013) (citing *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006)). For purposes of jurisdiction under C.P.L.R. 302(a)(3), courts look to "the place where the underlying, original event occurred which caused

---

[3] Plaintiff does not specify the provision of N.Y. C.P.L.R. 302 upon which he relies. Nevertheless, based upon his assertion that the alleged harm at issue is a "tort generated outside the state that caused damage within the state," *see* Pl.'s Opp'n at 3, the Court interprets this as an attempt to invoke personal jurisdiction under N.Y. C.P.L.R. 302(a)(3).

13

the injury . . . not the location where the resultant damages are felt by the plaintiff." *M&M Packaging Inc. v. Kale*, 298 F. App'x 39, 42 (2d Cir. 2008) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001)); *see Birittieri v. Whole Foods Mkt. Group, Inc.*, No. 21-CV-8703(NSR), 2023 WL 2266481, at *5 (S.D.N.Y. Feb. 28, 2023) (observing that "courts apply a situs-of-injury test, which asks [courts] to locate the original event which caused the injury"). "[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am.*, 286 F.3d 81, 84 (2d Cir. 2001).

Patterson fails to plausibly allege that Defendants are subject to personal jurisdiction in New York. According to Plaintiff, Defendants are Nevada corporations that contacted him regarding the sale of a property he owned in Pennsylvania and the purchase of a new property in Nevada. *See* Am. Compl. ¶¶ 2, 6-11. Plaintiff does not allege that Defendants regularly conduct or solicit business in New York, or that they should have reasonably expected that their actions related to the Purchase Agreement would have consequences in New York. To the contrary, the Sapphire Property at issue is in Nevada, and Plaintiff traveled to Nevada any time he interacted with Defendants in relation to this matter. *Id.* Indeed, Patterson specifically alleges that he traveled to Las Vegas to attend a sales presentation about the Sapphire Property and that any assurances he sought and/or received regarding the Sapphire Property took place during meetings in Nevada. *Id.* at ¶¶ 9-11. Therefore, his allegations are insufficient to establish that jurisdiction exists under N.Y. C.P.L.R. 302(a)(3). *Mednik v. Specialized Loan Servicing, LLC*, No. 20-CV-

14

427(MKB), 2021 WL 707285, at *7 (E.D.N.Y. Feb. 23, 2021) ("It is well settled that residence or domicile of the injured party within New York is not a sufficient predicate for jurisdiction under section 302(a)(3).") (internal alterations and quotation omitted); *Gonsalves-Carvalhal v. Aurora Bank, FSB*, No. 12-CV-2790(MKB), 2014 WL 201502, at *5 (E.D.N.Y. Jan. 16, 2014) (holding that personal jurisdiction did not exist for a defendant that was not domiciled in New York, did not regularly conduct or solicit business in New York, and should not have reasonably expected its out-of-state conduct to have consequences in New York); *C.B.C. Wood Prods., Inc. v. LMD Integrated Logistics Servs., Inc.*, 455 F. Supp. 2d 218, 227 (E.D.N.Y. 2006) ("[T]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.") (internal quotation omitted).

Plaintiff counters that, by contacting him while he was in New York, Defendants have the requisite minimum contacts here to establish personal jurisdiction. *See* Pl.'s Opp'n at 3. Patterson does not allege, however, that any of the underlying harm related to this action took place in New York. Instead, he appears to rely solely on the fact that he is a New York resident, *id.*, which is insufficient to confer jurisdiction over Defendants. *See Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) ("[R]esidence or domicile of the injured party within New York is not a sufficient predicate for jurisdiction under section 302(a)(3).") (internal alterations omitted); *Lear v. Royal Caribbean Cruises Ltd.*, No. 20-CV-

15

4660(GHW), 2021 WL 1299489, at *10 (S.D.N.Y. Apr. 7, 2021) ("[A] plaintiff's 'mere residence in New York is insufficient to establish personal jurisdiction over a nondomiciliary defendant under § 302(a)(3).'") (quoting *DiStefano*, 286 F.3d at 85).

Finally, to the extent that Plaintiff contends that Defendants are subject to jurisdiction in New York because they "reached out to him in New York," *see* Pl.'s Opp'n at 3, courts have routinely held otherwise. *See, e.g.*, *Berkshire Capital Group, LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 481 (2d Cir. 2008) (holding personal jurisdiction did not exist based upon negotiation of an agreement by telephone calls and emails from Illinois to New York); *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) (declining to find personal jurisdiction "solely on the basis of defendant's communication from another locale with a party in New York"); *Diversapack LLC v. Elite Staffing, Inc.*, No. 11-CV-2482(SJF)(ETB), 2012 WL 1032687, at *3 (E.D.N.Y. Mar. 20, 2012) (holding that, even where the defendant contacted the plaintiff in New York, the defendant was not subject to personal jurisdiction where its business was not "substantial and continuous"); *C.B.C. Wood Prods., Inc.*, 455 F. Supp. 2d at 223 ("[I]t is well-established that solicitation of business alone will not justify a finding of corporate presence in New York."); *Am./Int'l 1994 Venture v. Mau*, 146 A.D.3d 40, 53-54, 42 N.Y.S.3d 188, 198 (2d Dep't 2016) (holding that the defendant was not subject to personal jurisdiction in New York where it sent one letter and engaged in telephone calls, but did not hold any meetings in New York).

16

Based upon the foregoing, Plaintiff fails to plausibly allege that Defendants have minimum contacts with New York sufficient to satisfy New York's long-arm statute. N.Y. C.P.L.R. 302(a)(3). Therefore, the Court recommends that his Amended Complaint also be dismissed for lack of personal jurisdiction.

### B. Arbitration and Forum Selection Clauses Bar Plaintiff from Proceeding in New York

Defendants further seek dismissal of the Amended Complaint based upon the Arbitration Clause and Forum Selection Clause in the Purchase Agreement. *See* Defs.' Mem. at 19-21; Purchase Agreement at §§ 15(a), 16.6. Although dismissal is appropriate for lack of subject matter jurisdiction and personal jurisdiction, these clauses provide additional bases to grant Defendants' motion. As described above, the Arbitration Clause requires that Plaintiff bring any claims arising out of the Purchase Agreement in arbitration, and the Forum Selection Clause requires that any claims related to the Purchase Agreement be brought in Clark County, Nevada. *See* Purchase Agreement at §§ 15(a), 16.6.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "requires federal courts to uphold and enforce 'privately made agreements to arbitrate' as they would any other contract." *Cole v. Pearson Educ., Inc.*, No. 10 Civ. 7523(JFK)(RLE), 2011 WL 4483760, at *4 (S.D.N.Y. Sept. 28, 2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S. Ct. 1238, 1242 (1985)); *Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17-CV-5846(VSB), 2020 WL 496078, at *4 (S.D.N.Y. Jan. 30, 2020) (dismissing claims based on a broad arbitration agreement). Likewise, forum selection clauses are *prima facie* valid and controlling. *M/S Bremen v. Zapata Off-*

17

*Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 1913 (1972); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (describing the four-step analysis in determining whether to dismiss a claim based on a form selection clause). Enforcement of a forum selection clause "is an appropriate basis for a motion to dismiss." *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 447 (E.D.N.Y. 2013).

Plaintiff does not dispute that the Purchase Agreement contains an Arbitration Clause and Forum Selection Clause, both of which would preclude him from proceeding in this Court. Nor does he argue that they are in any way unenforceable other than because "he was fraudulently induced to enter into the agreement by misrepresentations that the time share program was endorsed by the VA." Pl.'s Opp'n at 5. Even if Patterson's allegations of fraud are true, however, an arbitration or forum selection clause in a contract is only unenforceable "if the inclusion of ***that clause*** in the contract was the product of fraud or coercion." *Bank v. Laptop & Desktop Repair LLC*, 206 F. Supp. 3d 772, 780 (E.D.N.Y. 2016) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14, 94 S. Ct. 2449, 2457 (1974)) (emphasis added); *Gen. Elec. Capital Corp. v. Mehta*, No. 01 Civ. 11259(SAS), 2002 WL 511553, at *2 n.6 (S.D.N.Y. Apr. 4, 2002) ("A party challenging a forum selection clause on the basis of fraudulent inducement must allege facts with respect to the specific clause, not the contract as a whole."). As Plaintiff does not contend that the inclusion of these specific clauses in the Purchase Agreement was the result of fraud or collusion, and only asserts that he was fraudulently induced to enter into the Purchase Agreement itself, the Arbitration Clause and Forum Selection Clause are

18

enforceable and provide a further basis for dismissal. Accordingly, the Court also respectfully recommends that Plaintiff's Amended Complaint be dismissed because venue is improper under the Arbitration Clause and Forum Selection Clause.

### C. Plaintiff's Substantive Allegations

Having recommended that Plaintiff's claims be dismissed for lack of subject matter and personal jurisdiction, and for failure to pursue them in the appropriate venue, the Court declines to address the substantive adequacy of his allegations for fraudulent inducement and breach of the implied covenant of good faith and fair dealing. *See, e.g.*, *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 206-07 (2d Cir. 2019) (observing that where a court dismisses a complaint for lack of subject matter jurisdiction, the court does "not have the power to reach the merits and dismiss the claims against the defendants for failure to state a claim"); *Butler v. Faraci*, No. 24-CV-36(GRB)(ARL), 2024 WL 1282352, at *6 (E.D.N.Y. Mar. 26, 2024) ("In the absence of subject matter jurisdiction for the reasons set forth above, the Court does not reach the merits of Plaintiff's claims . . . .").

### D. Leave to Replead

In his opposition, Plaintiff does not seek leave to replead and file a second amended complaint. Accordingly, and considering the bases for dismissal enumerated above, the Court does not recommend that Plaintiff be granted leave to file a second amended complaint and recommends that the Amended Complaint be dismissed with prejudice.

19

### III. CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that Defendants' motion to dismiss be granted and that Plaintiff's Amended Complaint be dismissed in its entirety.

### IV. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
         November 20, 2024

                                             s/ Steven I. Locke
                                             STEVEN I. LOCKE
                                             United States Magistrate Judge